# United States Court of Appeals for the Federal Circuit

---

**CLINICOMP INTERNATIONAL, INC.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

**CERNER CORPORATION,**
*Defendant-Cross-Appellant*

---

2018-1101, 2018-1318

---

Appeals from the United States Court of Federal Claims in No. 1:17-cv-01115-LKG, Judge Lydia Kay Griggsby.

---

Decided: September 19, 2018

---

RICHARD J.R. RALEIGH, JR., Wilmer & Lee PA, Huntsville, AL, argued for plaintiff-appellant. Also represented by JEROME S. GABIG, CHRISTOPHER LEA LOCKWOOD.

WILLIAM PORTER RAYEL, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by CHAD A. READLER, ROBERT E. KIRSCHMAN, JR., DOUGLAS K. MICKLE.

GABRIEL BELL, Latham & Watkins LLP, Washington, DC, argued for defendant-cross-appellant. Also represented by DEAN W. BAXTRESSER, DAVID HAZELTON, KYLE R. JEFCOAT, ANNE W. ROBINSON.

------

Before PROST, *Chief Judge,* WALLACH and TARANTO, *Circuit Judges.*

PROST, *Chief Judge.*

CliniComp International, Inc. ("CliniComp") appeals a decision of the U.S. Court of Federal Claims ("Claims Court") dismissing CliniComp's pre-award bid protest for lack of standing. We affirm.

## BACKGROUND

### I

The Department of Veterans Affairs ("VA") and Department of Defense ("DoD") operate two of the nation's largest healthcare systems and serve an overlapping patient population. Over the past twenty years, these two government agencies have tried to make their respective electronic health records ("EHR") systems interoperable.

In 2011, the VA and the DoD committed to developing an integrated EHR system, which would replace the agencies' separate systems with a common system. But in 2013, the agencies abandoned that plan in favor of separate initiatives concerning their own EHR systems.

The DoD decided to purchase a commercially available system to replace its then-existing "AHLTA" EHR system. In 2015, after a competition, the DoD awarded a $4.3 billion contract for delivery of a modern, commercial off-the-shelf EHR system. This EHR system consists primarily of software developed by Cerner Corporation ("Cerner").

The VA, for its part, decided to modernize its then-existing "VistA" EHR system. The VA issued a request for information in April 2017 concerning the industry's capability of providing a commercialized version of VistA. It also engaged a private consultant, Grant Thornton, to assess the market's ability to meet the VA's needs through four options—three involving acquiring a commercial off-the-shelf EHR system, and the fourth involving modernizing VistA. Grant Thornton issued a report on May 17, 2017, finding that the market could support all four options. The report concluded that the VA's best option for improving interoperability with the DoD would depend on the VA's own evaluation of the benefits and risks of acquiring a commercial off-the-shelf system versus modernizing VistA.

The VA ultimately chose to acquire a new system rather than modernize its old one. On June 1, 2017, the VA Secretary invoked the public-interest exception to the Competition in Contracting Act's requirement of full and open competition, 41 U.S.C. §§ 3301, 3304(a)(7), and signed a Determination and Findings ("D&F") authorizing the VA to negotiate a sole-source contract with Cerner "for the acquisition of the [EHR] system being deployed by the [DoD] and related services for deployment and transition across the VA enterprise in a manner that meets VA needs, and which will enable seamless healthcare to Veterans and qualified beneficiaries." J.A. 10001. The D&F indicates that the contract would require deploying and maintaining an EHR system for approximately 1,600 VA care sites nationwide. J.A. 10001, 10005. It further states:

> Under the contract, at a minimum, Cerner will provide the full scope of services, including integration, configuration, testing, deployment, hosting, organizational change management, training, and sustainment, and licenses necessary to deploy the DoD's EHR system in a manner that meets

> VA needs. The contract will also address all EHR functions supporting clinical care including revenue cycle, in-patient, ambulatory, as well as home care, ancillaries, and specialties to include dental. The contract will also address non-clinical core functional requirements, which may include inventory management/supply chain capabilities.

J.A. 10005.

## II

CliniComp is an incumbent provider of EHR systems to the VA. It filed this bid protest with the Claims Court, asserting (among other things) that the VA's sole-source decision lacked a rational basis and violated the Competition in Contracting Act. CliniComp also moved for a preliminary and permanent injunction preventing the VA from awarding a sole-source contract to Cerner. Cerner intervened. CliniComp then moved for judgment on the administrative record, and the government and Cerner responded with motions to dismiss and cross-motions for judgment on the administrative record.

The Claims Court granted the motions to dismiss, finding that CliniComp lacked standing to protest the VA's sole-source decision. *CliniComp Int'l, Inc. v. United States*, 134 Fed. Cl. 736 (2017). The Claims Court noted that to establish standing, CliniComp had to show that it (1) was "an actual or prospective bidder" and (2) had a "direct economic interest in the procurement or proposed procurement." *Id.* at 745 (internal quotation marks omitted) (quoting *Diaz v. United States*, 853 F.3d 1355, 1358 (Fed. Cir. 2017)). Because the first prong of this test was undisputed, the court focused on whether CliniComp had a "direct economic interest" that would be affected by the sole-source contract award to Cerner. *Id.* at 749.

The Claims Court found that CliniComp failed to show that it had a "direct economic interest" because

CliniComp failed to show that it could have competed for the contract had the procurement process been competitive. *Id.* at 750. In particular, the court found that CliniComp failed to show that it had experience providing EHR services for the substantial number of facilities to be covered by the proposed contract to Cerner. That contract would cover approximately 1,600 VA healthcare sites, while CliniComp had provided EHR services for only 44 VA healthcare facilities and 56 DoD medical treatment facilities. *Id.* The court also found that CliniComp had not demonstrated any experience providing the comprehensive services required under the proposed contract to Cerner. *Id.* at 750–51. For example, the court noted that the proposed contract to Cerner would require support of in-patient *and* outpatient services, and CliniComp had not demonstrated experience providing outpatient services. *Id.* at 751.

Based on the evidence before it, the Claims Court concluded that CliniComp lacked standing because it "has not shown that [it] has the kind of experience that would enable it to compete for the work contemplated by the VA's planned contract with Cerner." *Id.* The Claims Court therefore dismissed for lack of standing. CliniComp appeals that dismissal.

We have jurisdiction under 28 U.S.C. § 1295(a)(3).

DISCUSSION

I

We review standing determinations de novo and any underlying fact findings for clear error. *Digitalis Educ. Sols., Inc. v. United States*, 664 F.3d 1380, 1384 (Fed. Cir. 2012) (citing *Labatt Food Serv., Inc. v. United States*, 577 F.3d 1375, 1379 (Fed. Cir. 2009)).

The Claims Court's jurisdiction over bid protests is articulated in 28 U.S.C. § 1491(b)(1), which provides for jurisdiction over "an action by an interested party object-

ing to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1).

The party invoking federal jurisdiction bears the burden of establishing standing. *Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1369 (Fed. Cir. 2002) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). To satisfy § 1491(b)(1)'s standing requirements, a plaintiff must make two showings. *Diaz*, 853 F.3d at 1358. First, it must show that it is an "interested party." This requires the plaintiff to show that it is "an actual or prospective bidder" and has a "direct economic interest" in the procurement or proposed procurement. *Id.* (quoting *Digitalis*, 664 F.3d at 1384). And "[t]o prove a direct economic interest, a party must show that it had a substantial chance of winning the contract." *Id.* (quoting *Digitalis*, 664 F.3d at 1384).

Second, the plaintiff must show that it was prejudiced by a significant error in the procurement process. *Id.* (citing *Labatt*, 577 F.3d at 1378); *see Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003). "A party has been prejudiced when it can show that *but for the error*, it would have had a substantial chance of securing the contract." *Labatt*, 577 F.3d at 1378 (emphasis added). Although the inquiries may be similar, prejudice must be shown either as part of, or in addition to, showing a direct economic interest. *See id.* at 1379–80 (explaining that courts should not "conflat[e] the standing requirements of prejudicial error and economic interest," because doing so would mean that "there would be no such thing as an error non-prejudicial to an economically interested offeror in a bid contest"); *see also Diaz*, 853 F.3d at 1358–59.

II

CliniComp challenges the VA's decision to award an EHR-system contract to Cerner on a sole-source basis. We have addressed what a plaintiff must show to establish prejudice in the sole-source context. In *Myers*, we held that a plaintiff bears the burden of establishing that it had a substantial chance of receiving the award. 275 F.3d at 1370. But we noted that, in the sole-source context, "the plaintiff need only establish that it could compete for the contract if the bid process were made competitive." *Id.* (internal quotation marks omitted). "Although [the plaintiff] need not show that it would have received the award in competition with other hypothetical bidders, it must show that it would have been a qualified bidder." *Id.* at 1370–71.

The Claims Court in *Myers* found no prejudice because the plaintiff had "not proven it had the sources or the man-power to supply the . . . services sought by [the sole-source contracts]" and had "not provided the court with any evidence demonstrating that it ha[d] been awarded or successfully performed contracts for similar services in the past." *Id.* at 1371. We accordingly held that the plaintiff in that case lacked standing to bring its bid protest. *Id.*

A similar analysis and conclusion apply here. The Claims Court reviewed the record, including what the proposed contract to Cerner would require and evidence bearing on CliniComp's capabilities. The Claims Court noted that the contract would require comprehensive EHR services—both in-patient and outpatient—at 1,600 VA healthcare sites. *CliniComp*, 134 Fed. Cl. at 750–51. And it found that CliniComp failed to demonstrate a capability even approaching what would be required under a contract of this size and scope, given that CliniComp only had experience providing EHR services at 100 facilities and had not demonstrated an ability to provide

outpatient services. *Id.* Ultimately, the Claims Court found that the evidence before it made clear that Clini-Comp failed to show it possessed the kind of experience that would enable it to compete for the work contemplated by the VA's proposed contract to Cerner. *Id.* at 751. The Claims Court accordingly found that CliniComp lacked standing. *Id.*

Prejudice is a fact question. *E.g.*, *Diaz*, 853 F.3d at 1359; *Tinton Falls Lodging Realty, LLC v. United States*, 800 F.3d 1353, 1358 (Fed. Cir. 2015). We see no clear error in the Claims Court's factfinding in this regard, nor has CliniComp demonstrated any such error. We therefore conclude that CliniComp lacks standing in this bid protest.

Resisting this conclusion, CliniComp argues that because this is a pre-award protest, the Claims Court should have applied the test for prejudice articulated in *Weeks Marine, Inc. v. United States*, 575 F.3d 1352 (Fed. Cir. 2009). In *Weeks Marine*, the Army Corps of Engineers had previously awarded contracts for dredging work—including some to the plaintiff—under competitive sealed bidding procedures. *Id.* at 1355–56. The Corps then decided to change its method of procurement from competitive sealed bidding to a negotiated procurement involving indefinite duration indefinite quantity multiple-award task order contracts. *Id.* at 1355. Before submitting a bid, and before any award was made under the new solicitation, the plaintiff filed a bid protest challenging the solicitation's new method of procurement. *Id.* at 1354–55, 1360.

We first evaluated the plaintiff's standing to bring its pre-award protest to the terms of the solicitation. We noted that, in that context of a pre-award challenge to a competitive solicitation, "it is difficult for a prospective bidder/offeror to make the showing of prejudice that we have required in post-award bid protest cases." *Id.* at

1361. This was because in that case "there ha[d] been neither bids/offers, nor a contract award," and therefore "no factual foundation [existed] for a 'but for' prejudice analysis." *Id.* Acknowledging that *some* prejudice must be shown, however, we required the plaintiff to demonstrate a "non-trivial competitive injury which can be addressed by judicial relief." *Id.* at 1361–62. We found that the plaintiff demonstrated such an injury. We observed, however, that there was no dispute that the plaintiff in that case could do the work required under the new solicitation. *Id.* at 1360 (noting the government's concession that the plaintiff "is capable of doing the dredging work contemplated by the contracts," including that it had the technical capability and the financial wherewithal to do the work).

Here, unlike in *Weeks Marine*, there is a dispute as to whether CliniComp could do the work required under the proposed contract to Cerner. And as described above, CliniComp failed to show that it was a qualified bidder in this regard. Absent such a showing, CliniComp could not satisfy the "non-trivial competitive injury" standard for prejudice set forth in *Weeks Marine*. In other words, to suffer a non-trivial *competitive injury*, CliniComp must at least be qualified to compete for the contract it seeks. Therefore, although we apply the standard for prejudice as articulated in *Myers*, our conclusion would be the same applying the "non-trivial competitive injury" standard set forth in *Weeks Marine*.

CliniComp also argues that the requirements of the proposed Cerner contract are not known, and therefore, we cannot conclude that CliniComp is incapable of performing the contract. *See* CliniComp's Br. 29, 36, 39. The Claims Court rejected this argument, finding that "[t]he administrative record contains ample evidence regarding the nature and scope" of the proposed contract to Cerner. *CliniComp*, 134 Fed. Cl. at 751. We likewise reject this argument. The D&F indicates, for example, that the

contract would require deploying and maintaining an EHR system for approximately 1,600 VA care sites. J.A. 10001, 10005. It also lists several examples of the EHR services required, including outpatient services. J.A. 10005. This is not a case where a plaintiff is unable to demonstrate its ability to compete due to a lack of information about what is required. Here, CliniComp lacks standing because it failed to demonstrate an ability to perform specific requirements that are set forth in the administrative record.

CliniComp further argues that it has standing because, as an incumbent EHR systems provider to the VA, it stands to lose work as a result of the proposed award to Cerner. CliniComp's Br. 34 ("CliniComp has standing to challenge a VA procurement decision that will result in the VA terminating CliniComp's business and its use of CliniComp's products."). But to have standing, CliniComp's prejudice must be due to some alleged error in the procurement process. *Labatt*, 577 F.3d at 1380–81. Here, CliniComp claims prejudice from the government's alleged error of awarding this contract on a sole-source basis. To establish that its prejudice is due to this alleged error, CliniComp must show that if the error were rectified—i.e., if the contracting process were made competitive—CliniComp could compete for the contract. CliniComp has not made that showing.

CliniComp finally argues that it is qualified to compete because it could hire subcontractors to help do the work required under the proposed contract to Cerner. CliniComp's Br. 41. The Claims Court did not address this argument—possibly because CliniComp did not raise it in its briefing on the motions to dismiss or motions for judgment on the administrative record.[1] Even if not

---

[1]   At oral argument, CliniComp's counsel confirmed that CliniComp first raised this issue in rebuttal at the

forfeited, however, the argument is unpersuasive. CliniComp has not supplied any details regarding how, or with whom, it would subcontract to perform what is required under the proposed contract to Cerner.[2] CliniComp's vague, cursory references to using subcontractors to perform the work it is unable to do are insufficient to cure CliniComp's otherwise deficient showing that it is a qualified bidder here.

## CONCLUSION

We have considered CliniComp's other arguments and find them unpersuasive. For the foregoing reasons, we affirm the Claims Court's dismissal for lack of standing.[3]

## **AFFIRMED**

## COSTS

The parties shall bear their own costs.

---

oral argument at the Claims Court. Oral Arg. at 2:08–23, No. 2018-1101, http://www.cafc.uscourts.gov/oral-argument-recordings.

[2] After oral argument at the Claims Court, CliniComp moved the Claims Court for leave to file a supplemental brief with an exhibit addressing CliniComp's ability to subcontract. The Claims Court denied CliniComp's motion, and CliniComp has not appealed that denial. We therefore do not consider those materials.

[3] Our affirmance of the Claims Court's dismissal moots CliniComp's motions for injunctive relief, ECF Nos. 3 & 77.